# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **MARVEL THOMPSON,** | |
| Plaintiff, | Case No. 10 C 4455 |
| v. | Hon. Harry D. Leinenweber |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Marvel Thompson ("Plaintiff") filed a Complaint seeking review of a jeopardy assessment by the Internal Revenue Service. Plaintiff objects to the Summons issued in the case, requests the return of his filing fee, and seeks judgment on his claim. Plaintiff also seeks judicial notice of certain facts. The Government moves for summary judgment in the case. The Motions are denied and the jeopardy assessment is affirmed.

## I. BACKGROUND

### A. Procedure and Prior History

This case involves a few different courts and rulings. Plaintiff Marvel Thompson ("Thompson") was arrested in Chicago, Illinois on May 12, 2004 on federal charges, including a conspiracy to sell illegal narcotics. On March 29, 2005, Thompson pled guilty to conspiracy to possess with intent to distribute cocaine and

heroin. On April 26, 2007, Judge Elaine E. Bucklo of the Northern District of Illinois sentenced Thompson to 540 months incarceration, a $100 assessment, and a $100,000 fine. *United States v. Thompson et al.*, 04 CR 0464 (N.D. Ill., May 11, 2004). The District Court was affirmed on appeal on September 29, 2009. *United States v. White et al.*, 582 F.3d 787 (7th Cir. 2009). Thompson is currently serving his term of incarceration in Pollock, Louisiana, located within the Western District of Louisiana.

The instant case involves money that was seized at the time of Thompson's arrest. The Federal Bureau of Investigation (the "FBI") seized $320,055.25 in currency from Thompson's home. The sum of $8.775.20 of this money was administratively forfeited to the FBI. The balance is currently in the custody of the U.S. Marshals Service in Chicago. This balance was not forfeited as part of Thompson's criminal case.

On March 4, 2008, Thompson moved for the return of the seized currency, as well as the return of other property seized during his arrest, under Federal Rule of Criminal Procedure 41(g). Thompson properly filed his motion in front of Judge Bucklo, who issued a final ruling on the motion on June 25, 2010. *Thompson v. United States*, 2010 WL 2573903 (N.D. Ill., June 25, 2010). Judge Bucklo first assessed the outstanding balance of the fine, roughly $98,500, against the seized currency. She ruled that the remaining funds were properly "considered as belonging to Thompson as of March 4, 2008," but the funds would be retained by the United

States until Thompson's tax dispute with the Internal Revenue Service (the "IRS") was resolved.

While the Rule 41(g) Motion was pending, the IRS reviewed Thompson's records and found a tax deficiency for the 2004 tax year. Because Judge Bucklo had not yet issued her opinion, the IRS determined that the funds were in jeopardy if they were released from the Government's possession. To protect its interest in the funds, the IRS issued a Notice of Levy to the Marshals Service for $218,797.48. Thompson received a notice of the jeopardy assessment on January 26, 2010, and protested the assessment on February 22. The IRS denied the protest on April 5, and on May 4 Thompson filed the instant suit for a judicial review of the jeopardy assessment in the Western District of Louisiana. Less than two weeks later, Thompson filed a motion which objected to the summons that was issued and requested a return of the filing fee he paid.

The Government had not answered the Complaint as of June 15, 2010, so Thompson moved for something similar to a default judgment against the Government. Thompson based this motion on the statutory requirement that the judicial review of a jeopardy assessment be completed within twenty days. The Government answered the Complaint on June 18 and included defenses of improper service and venue. Judge James T. Trimble, Jr., Senior District Judge of the Western District of Louisiana, denied Thompson's Motion for judgment, found that venue was improper in the Western District of Louisiana but proper in the Northern District of

Illinois, and transferred the case to this Court for further proceedings. Although not appearing on the docket, Thompson alleges that he filed a Motion for Reconsideration on July 24, which Judge Trimble denied on August 4. After the transfer, Thompson filed two new motions: (1) a Motion for Judgment which essentially repeated his earlier claims for a default judgment and (2) a Motion for a Decision on his earlier motion regarding the summons and filing fee.

Shortly before this ruling, Thompson filed a Motion to take judicial notice of certain facts and the Government filed a Motion for Summary Judgment. Neither side had the opportunity to respond to these last two motions.

### B. Facts for Jeopardy Assessment

The IRS jeopardy assessment determined that Thompson had not filed income tax returns or paid taxes for tax years 2000 through 2004. The IRS considered the $320,055.25 that was seized by the FBI as unreported income for tax year 2004. This resulted in $107,565.00 in taxes owed, $54,175.86 in penalties, and $57,056.62 in interest (computed through February 10, 2010), for a total of $218,797.48 owed for tax year 2004.

The IRS laid out the reason for the jeopardy assessment in the January 26 notice. To determine whether the tax collection was at risk, the IRS used Judge Bucklo's net worth estimate for Thompson from her January 30, 2009 Memorandum Opinion and Order. This estimated that Thompson had $585,000 in total assets and $1,000,000

in debts, for a negative net worth of $415,000. Based on these figures, the IRS agent found that Thompson's financial solvency was imperiled and recommended a jeopardy assessment.

## II. **LEGAL STANDARD**

In reviewing a jeopardy assessment, a district court must determine if the assessment is reasonable under the circumstances and if the amount assessed is appropriate. 26 U.S.C. § 7429(b)(3)(A). "'Reasonable under the circumstances' means something more than 'not arbitrary or capricious' and something less than 'supported by substantial evidence.'" *Wellek v. United States*, 324 F.Supp.2d 905, 911 (N.D. Ill. 2004).

"[T]he IRS does not have to show that the information it relied upon in making the assessments would be admissible at a trial on the merits and [ ] the government is not required to make its final case against the taxpayer, but only a preliminary showing of reasonableness." *Hiley v. United States*, 807 F.2d 623, 629 (7th Cir. 1986). The government bears the burden of proving that the assessment is reasonable, while the taxpayer bears the burden of proving that the amount of the assessment is not appropriate. 26 U.S.C. § 7429(g).

## III. **ANALYSIS**

Five issues remain open before this Court: (1) Plaintiff's Motion for Judgment, (2) Plaintiff's objections to the summons and filing fee, (3) the merits of the jeopardy assessment, (4) Plaintiff's Motion for Judicial Notice, and (5) the Government's

Motion for Summary Judgment. The Court will address these issues in turn.

### A. Motion for Judgment

Plaintiff seeks a judgment in his favor based on the delay in the resolution of his judicial review. The Government responds that the motion should be denied because a nearly identical motion for judgment was rejected by Judge Trimble when the case was docketed in the Western District of Louisiana.

Congress dictated that judicial review of a jeopardy assessment was to be completed within twenty days after a proceeding is commenced. 26 U.S.C. § 7429(b)(3). Plaintiff filed this case on May 4, 2010, the Government responded on June 18, the case was transferred on July 15, and this Court received the case on July 19. The Government is correct that in his July 15 ruling, Judge Trimble denied an almost identical motion for judgment. However, due to the improper venue at the time of Judge Trimble's ruling on the first motion for judgment and the possibility that Plaintiff is raising the motion based on the delay *since* the transfer, this Court will review Plaintiff's motion on the merits out of an abundance of caution.

Congress dictated that the judicial review shall be completed within twenty days but did not provide any indication of the consequences if a court missed this deadline. While Congress did not provide any guidance, the Seventh Circuit has considered this very situation and its opinion is binding on this Court.

The Seventh Circuit found that the taxpayer bears the responsibility of informing the district court of the statutory time constraint involved. *United States v. Doyle*, 660 F.2d 277, 280 (7th Cir. 1981). It reasoned that the deadline is both extraordinary and extraordinarily short, and that because the taxpayer is the one with knowledge of the deadline then the most reasonable means of avoiding error is to place the burden of informing the court of the deadline on the taxpayer. *Id.* This was also the most reasonable means of "achieving the prompt action envisioned by the statute." *Id.* Therefore, while district courts err when they fail to rule within twenty days, a Plaintiff is not entitled to a default judgment because of this error. *Id.* The Eleventh Circuit came to the same conclusion in a very similar situation. *See, Meadows v. United States*, 665 F.2d 1009, 1012 (11th Cir. 1982).

A reasonable reading of the statute supports this interpretation by the courts.

> If the court determines that the making of such levy is unreasonable, that the making of such assessment is unreasonable, or that the amount assessed or demanded is inappropriate, **then** the court may order the Secretary to release such levy, to abate such assessment, to redetermine (in whole or in part) the amount assessed or demanded, or to take such other action as the court finds appropriate.

26 U.S.C. § 7429(b)(4)(emphasis added). The statute requires a court to find the assessment unreasonable or the amount assessed inappropriately *before* the court may order the government to abate

the assessment. In the absence of such a finding, such as would occur when the court takes no action at all on a case, the court is without statutory authority to abate the assessment.

The denial of a quasi-default judgment is particularly reasonable in the present case. First, Plaintiff bears responsibility for the delay which occurred in this case because he failed to abide by the venue provision in the statute. *See,* 26 U.S.C. § 7429(e). Second, Plaintiff failed to notify this Court of the short deadline *upon transfer*. *See, Doyle*, 660 F.2d at 280. Third, Plaintiff demonstrated no prejudice as a result of the delay in review. *See, Boyd v. United States*, 724 F.Supp. 1036 (D.D.C. 1989). In fact, prejudice due to a short delay *in this Court* seems unlikely when Plaintiff waited nearly a year after his sentencing to file his Rule 41(g) Motion for a return of the seized funds, even though he pled guilty and only challenged his sentence on appeal. While delay beyond twenty days is regrettable, this Court has acted as promptly as possible upon receiving notice of the unusual deadline, and this error does not act to grant Plaintiff a windfall. Plaintiff's Motion for Judgment is denied.

### B. Objections to Summons and Filing Fee

Plaintiff has two open motions related to the summons and filing fee in this case. The first motion objected to the return time specified in the summons and requested a return of the filing fee. The second motion simply requests a decision on this first motion.

Plaintiff claims that the summons was improper because it appeared to grant the Government 60 days to answer the complaint. Given this Court's ruling that Plaintiff is responsible for delay traceable to his filing in the Western District of Louisiana, and that Plaintiff is not entitled to judgment simply due to delay, any issues with the deadline in the summons are moot.

Plaintiff paid the $350 filing fee for this case, but seeks a return of this fee. Plaintiff claims that this fee is improper because this action is an extension of his administrative appeal so filing fee provisions do not apply. The statute provides Plaintiff with a right to a judicial review by way of a new civil action in a federal district court. *See* 26 U.S.C. § 7429(b)(2)(A) ("the district courts of the United States shall have exclusive jurisdiction over any **civil action** for a determination under this subsection")(emphasis added). It is incorrect to characterize this as a continued administrative action. This case is similar to other judicial reviews of administrative actions for which the standard filing fee for a new civil action is applied. *E.g.*, *Fletcher v. Apfel*, 210 F.3d 510, 513 (5th Cir. 2000). Plaintiff was properly charged the standard filing fee for a new civil action and his filing fee will not be returned.

Plaintiff's objection to the summons and request for a return of the filing fee are denied. Given that a decision has been rendered on this motion, Plaintiff's motion for a decision is granted.

## C. Judicial Review of the Jeopardy Assessment

The merits of the judicial review remain an open issue. Plaintiff seeks a judicial review of the IRS jeopardy assessment, which involves a two part inquiry: (1) the reasonableness of the assessment and (2) the appropriateness of the assessment amount.

### *1. Reasonableness of the Assessment*

> The general test for reviewing the reasonableness of an assessment involves an inquiry into whether: (1) the taxpayer is or appears to be designing to leave the United States or to conceal him or herself, (2) the taxpayer is or appears to be designing to hide, transfer, conceal, or dissipate his or her assets, or (3) the taxpayer's financial solvency appears to be imperiled. If any of the above conditions are met, the jeopardy assessment is reasonable.

*Wellek*, 324 F.Supp. 2d at 912 (citations omitted). The Government argues that the jeopardy assessment was reasonable because it was properly based on Plaintiff's financial insolvency as well as a number of secondary factors.

In the "Notice of Jeopardy Assessment and Right of Appeal" letter sent by the IRS to Plaintiff, the IRS specifically noted that it was making a jeopardy assessment based on Judge Bucklo's net worth estimate of Plaintiff. Judge Bucklo found that Plaintiff had approximately $585,000 in assets and $1,000,000 in debts, which led the IRS to conclude that Plaintiff's financial solvency was imperiled. Relying on this net worth estimate was reasonable, but it turns out that Judge Bucklo was unaware of the seized funds at the time she made this estimate. However, even if the seized funds were considered in this estimate, Plaintiff would have had a

negative net worth of $94,944.75. The IRS properly based its jeopardy assessment on this insolvency, which is sufficient by itself to render the jeopardy assessment reasonable. *See Nolan v. United States*, 539 F.Supp. 788, 790 (D. Ariz. 1982).

A number of secondary factors support this result. Plaintiff was involved in significant criminal activity when the funds were seized. *See, Young v. United States*, 671 F.Supp. 1340, 1343 (S.D. Fla. 1987) ("A taxpayer's involvement in illegal activity alone is sufficient to warrant the use of a termination or jeopardy assessment."). Plaintiff's criminal activity involved cash transactions and large sums of cash were found in his home. *See, Simpson v. IRS*, 573 F.Supp. 146, 148 (M.D. Tenn. 1983) (plaintiff's involvement in a profitable criminal enterprise and possession of large amounts of cash "made it reasonable for the Government to conclude that the plaintiff had and would continue to conceal his assets"). Plaintiff failed to file returns for the four tax years preceding the seizure of funds. *See, Harvey v. United States*, 730 F.Supp. 1097, 1107 (S.D. Fla. 1990) ("The failure to file correct income tax returns and to pay tax liabilities when due are sufficient facts to justify the jeopardy assessments herein.").

Plaintiff suggests that the timing of the jeopardy assessment, long after the seizure of the funds, makes it unreasonable. The unusual nature of this case suggests quite the opposite. The funds have been securely in the Government's possession ever since the Government seized them from Plaintiff's home. The IRS learned

earlier this year that the funds may be released back to Plaintiff, at which time it promptly acted with the jeopardy assessment. The funds were not in danger of being concealed or dissipated while in the Government's possession so there was no need for a jeopardy assessment until this year.

The Government has met its burden of demonstrating that the jeopardy assessment is reasonable.

### *2. Appropriateness of the Amount of the Assessment*

Plaintiff contends that the amount of the assessment is not appropriate because the funds seized are not solely from the 2004 tax year and the amount assessed is increasing with penalties and interest because Plaintiff cannot use the seized funds to satisfy his tax obligations.

In determining if the amount assessed is appropriate, the focus of the analysis is on the method used to determine tax liability. *See, Lopez v. IRS*, 614 F.Supp. 1332, 1336 (E.D.N.Y. 1985). "The burden is on the taxpayer to show that the method of calculating the assessment amount is fatally defective, irrational, arbitrary, or unsupported." *Wellek*, 324 F.Supp.2d at 914. This review just determines if the assessment was done properly, and has no bearing on ultimate tax liability. *United States v. Doyle*, 482 F.Supp. 1227, 1230 (E.D. Wis. 1980).

In the present case, the total jeopardy assessment was $218,797.48. The IRS arrived at this figure by classifying the entire $320,055.25 seized as unreported income for the tax year

2004, then assessing the appropriate penalties and interest based on Plaintiff's failure to pay any taxes on this income. This method appears to be reasonable, as it even excludes any estimate of the unreported income which Plaintiff received but already spent or otherwise dissipated.

Plaintiff's first argument is that the amount assessed is not appropriate because the funds could have been from tax years in which he fully satisfied his tax obligations. The Government correctly points out that Plaintiff has the burden of bringing forth evidence to support this possibility. A mere statement that some of the funds *may* have been appropriately taxed in prior years is insufficient, especially when the IRS jeopardy assessment letter indicates that 1999 was the last tax year for which Plaintiff even filed a return.

Plaintiff's second argument is that the amount assessed is not appropriate because it includes penalties and interest that could have been avoided if the Government released the funds to Plaintiff so that he could pay his taxes. Judge Bucklo recognized this problem, and in her opinion she stated that Plaintiff would be considered the owner of the funds as of March 4, 2008, but would not be entitled to possession. However, the jeopardy assessment was completed before this opinion and therefore could not reasonably have taken this date into account. The calculation of the difference this makes in regards to the total assessment is part of the process of determining the ultimate tax liability.

This Court is only permitted to review the appropriateness of the procedure by which the amount assessed was determined, and the process was well-supported and logical at the time it was completed. Plaintiff has failed to carry his burden of proving that the amount assessed was not appropriate.

### D. **Plaintiff's Motion for Judicial Notice**

Plaintiff filed a Motion asking this Court to take judicial notice of certain facts, including: dates on which certain motions were filed, dates on which rulings were entered, and the locations from which certain money was seized. The Court need not take judicial notice of the docket to determine ruling dates and filing dates. The locations from which certain money was seized is not generally known in this territory or capable of accurate determination by resort to accurate sources. *See,* Fed. R. Evid. 201(b). In addition, it does not appear that these facts would assist this Court in ruling on the merits of Plaintiff's case. Plaintiff's Motion for Judicial Notice is denied.

### E. **Government's Motion for Summary Judgment**

The Government filed a Motion for Summary Judgment shortly before this Court's ruling. The merits of the case were fully briefed by the parties before this filing, since Plaintiff filed his Complaint, the Government answered, and Plaintiff replied to this answer. This Court relied on these briefings to rule, and did not consider the arguments or evidence from the motion for summary judgment because Plaintiff has not been given an opportunity to

respond. Given this Court's ruling, the Government's Motion is denied as moot, and Plaintiff need not respond to the motion.

## IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Plaintiff's Motion for Judgment is denied;

2. Plaintiff's Motion for a Decision on his pending Motion Objecting to Part of the Summons and Consolidated Request for Return of Filing Fee is granted;

3. Plaintiff's Objection to Part of the Summons and Consolidated Request for Return of Filing Fee is denied as moot in regards to the summons and denied as to the filing fee;

4. The Court finds the jeopardy assessment reasonable and the amount assessed appropriate under the circumstances. The Court orders the Secretary not to abate the assessment;

5. Plaintiff's Motion to Take Judicial Notice is denied; and

6. the Government's Motion for Summary Judgment is denied as moot.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:** 9/29/2010